IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| CHRISTINA HATFIELD BRENNEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 116-043 |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Christina Hatfield Brenneman appeals the decision of the Acting Commissioner of Social Security denying her application for Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

**I. BACKGROUND**

Plaintiff applied for SSI on July 2, 2012, alleging a disability onset date of January 1,

---

[1] The Court takes judicial notice that on January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), the Court **DIRECTS** the Clerk of Court to substitute Nancy A. Berryhill as Defendant in this case.

2008.[2] Tr. ("R."), pp. 11, 152-65. A prior disability application had been rejected and closed on April 6, 2012. R. 56. Plaintiff was thirty-seven years old at her alleged disability onset date and was forty-four years old at the time the Administrative Law Judge ("ALJ") issued the decision currently under consideration. R. 20, 256.

Plaintiff applied for benefits based on allegations of arthritis, diabetes, obesity, scoliosis, high blood pressure, high cholesterol, schizophrenia, bipolar disorder, anxiety, and "mental issues." R. 206. Plaintiff completed twelfth grade after taking special education classes. R. 33, 207. Prior to her alleged disability, Plaintiff had a work history consisting of customer service at a retail store and housekeeping at a hotel. R. 19, 34, 207.

The Social Security Administration denied Plaintiff's application initially, R. 55-75, and on reconsideration, R. 76-86. Plaintiff requested a hearing before an ALJ, R. 100-02, and the ALJ held a hearing on March 4, 2014. R. 25-54. The ALJ heard testimony from Plaintiff, who appeared with counsel, as well as from Cathy Sanders, a Vocational Expert ("VE"). Id. On August 5, 2014, the ALJ issued an unfavorable decision. R. 8-24.

Applying the sequential process required by 20 C.F.R. § 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since July 2, 2012, the application date (20 C.F.R. § 416.971 *et seq.*).

2. The claimant has the following severe impairments: lumbar scoliosis, degenerative joint disease of the knees, bi-polar disorder, and borderline intellectual functioning (20 C.F.R. § 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926).

---

[2]Although Plaintiff listed January 1, 2008 as the alleged disability date, SSI is not payable prior to the month following the month in which the application was filed. 20 C.F.R. § 416.335.

2

4. The claimant has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b) with restrictions that require no lifting or carrying more than 20 pounds occasionally and 10 pounds frequently; no climbing of ladders, ropes, or scaffolds, kneeling, crouching, or crawling; occasional climbing of ramps and stairs and stooping; frequent balancing; and avoid concentrated exposure to dangerous machinery and unprotected heights.[3] The claimant is further limited to occupations requiring no more than simple, routine, and repetitive tasks not performed in a fast paced production environment involving only simple work-related instructions and decisions, with relatively few work place changes; and also limited to occupations requiring no more than occasional interaction with co-workers and members [of] the general public. The claimant is unable to perform any past relevant work (20 C.F.R. § 416.965).

5. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform, including housekeeper, inventory clerk, and office helper (20 C.F.R. §§ 416.969, and 416.969(a)). Therefore, the claimant was not under a disability, as defined in the Social Security Act, since July 2, 2012, the date the application was filed (20 C.F.R. § 416.920(g)).

R. 13-20.

When the Appeals Council denied Plaintiff's request for review, R. 1-5, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision. Plaintiff argues the Commissioner's decision is not supported by substantial evidence

---

[3]"Light work" is defined as:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b).

because the ALJ: (1) failed to account for Plaintiff's use of a cane when formulating the RFC; and (2) failed to consider whether Plaintiff meets Listing 12.05C. See doc. no. 15 ("Pl.'s Br."). The Commissioner maintains the decision to deny Plaintiff benefits is supported by substantial evidence and should therefore be affirmed. See doc. no. 16 (Comm'r's Br.").

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r

of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

#### A. The ALJ Properly Omitted Use of a Cane when Formulating Plaintiff's RFC.

Plaintiff argues the ALJ incorrectly formulated an RFC for light work because he did not account for her use of a cane. According to Plaintiff, failing to discuss restrictions imposed by the use of a cane when formulating Plaintiff's RFC was error because (1) Plaintiff had been observed using a cane during visits to her mental health provider; and (2) a consultative examiner noted Plaintiff reported using a cane ninety percent of the time, had a slight limp while using her cane, and refused to ambulate without the cane because of a fear of falling. Pl.'s Br., pp. 4-6. Plaintiff further argues the jobs identified by the VE for Plaintiff "would, in all likelihood, be totally inappropriate for a person who had one hand engaged with a handheld assistive device all of the time." Id. at 6. Thus, Plaintiff suggests the case should

5

be remanded to complete the record with additional VE testimony about the impact of a cane on Plaintiff's ability to work. Id. The Commissioner argues the objective medical evidence, as reviewed by the ALJ, does not establish Plaintiff needed a cane, and therefore the ALJ properly omitted use of a cane from the RFC. Comm'r's Br., pp. 5-6.

To find that a hand-held assistive device, such as a cane, is medically required, "there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996). Moreover, "SSR 96-9p requires more than generalized evidence of a condition that might require a cane. It requires 'medical documentation *establishing the need* for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed.'" Staples v. Astrue, 329 F. App'x 189, 191 (10th Cir. 2009) (quoting SSR 96-9p); see also Reynolds-Buckley v. Astrue, No. 8:10-CV-1668-T-TGW, 2011 WL 2460919, at *5 (M.D. Fla. June 20, 2011) ("Significantly, the record contains no prescription for a cane, or other indication that the plaintiff requires an assistive device . . . . Since the plaintiff has not provided any [medical documentation establishing the need for a hand-held assistive device and describing circumstances in which device is needed], she has failed to show that the use of a cane is medically required.").

Plaintiff does not point to any evidence showing that her use of a cane is medically necessary. Plaintiff relies on notations in the report of the August 6, 2012 consultative examination performed by Lamar Peacock, M.D., concerning Plaintiff's use of a cane. As the ALJ acknowledged, Dr. Peacock noted Plaintiff could walk approximately fifty feet with

6

a cane, had a slight limp when using her cane, and refused to ambulate without a cane because of a fear of falling. R. 17 (citing Ex. D4F (R. 306-14)). Dr. Peacock also noted that although Plaintiff reported using a cane ninety percent of the time, she was generally able to rise from a sitting position without assistance or using her cane. R. 307. Furthermore, as the ALJ pointed out, Dr. Peacock also found Plaintiff was in no acute distress, had full range of motion with normal deep tendon reflexes and no sensory deficits in all extremities, normal range of motion in her lumbrosacral spine, knees, and ankles, and had 5/5 motor strength in all extremities. R. 17, 307-12.

Under the portion of Dr. Peacock's report asking for a description of gait and station, the examiner is asked to identify any assistive device that is required for ambulation and to give the medical basis for its use. R. 311. The form also indicates the patient should be evaluated with and without the device and that any reason precluding testing without the device must be specified. Id. Dr. Peacock stated only that Plaintiff had a slight limp when using a cane and refused to do the testing without the cane. Id. Dr. Peacock did not provide any indication that the cane was required for ambulation or state the medical basis for use of a cane.

The treatment providers upon whom Plaintiff relies for noting that she walked with a cane were not seeing Plaintiff for any physical issues related to ambulation, but rather were mental health providers from Serenity Behavioral Health Systems who made one sentence notations of their observations that Plaintiff walked with a cane. Pl.'s Br., p. 4 (citing Ex. D6F (R. 327-47)). They did not describe any medical necessity for using a cane.

The ALJ acknowledged Dr. Peacock's notation about Plaintiff using a cane, but as described above, the ALJ also contrasted that statement with other medical information in the

7

record. Indeed, even during the examination in which Dr. Peacock mentioned Plaintiff's use of a cane, he found full strength in her lower extremities. R. 311. Moreover, there is no medical documentation, as required by the Social Security regulation described above, establishing and describing the circumstances under which a cane is a medical necessity, let alone a medical necessity for a consecutive twelve-month period. See 20 C.F.R. § 416.905(a). Thus, there was no error in formulating Plaintiff's RFC without including the need to use a cane.

### B. The ALJ Properly Relied on the VE's Testimony.

In an argument that dovetails with her argument about the ALJ failing to include use of a cane in the RFC, Plaintiff contends the ALJ erred by failing to include the use of a cane when posing hypotheticals to the VE. Pl.'s Br., pp. 6-10. Plaintiff then attempts to show why the jobs identified by the VE for Plaintiff would "be totally inappropriate for a person who had one hand engaged with a handheld assistive device all of the time," and she requests remand to allow development of the record with additional VE testimony. Id. Plaintiff requests this remand even though she was represented by counsel at the administrative hearing, had an opportunity to pose questions to the VE, but never raised the use of a cane. R. 51-53.

The underlying assumptions of the hypothetical questions posed to the VE must accurately and comprehensively reflect the claimant's characteristics, and a reviewing court must determine whether they are supported by substantial evidence. McSwain v. Bowen, 814 F.2d 617, 619-20 (11th Cir. 1987); Pendley v. Heckler, 767 F.2d 1561, 1562-63 (11th Cir. 1985); see also Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999) ("In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."). However, a hypothetical question need not incorporate alleged

8

impairments that the ALJ has properly discredited or found to be unsupported by the medical evidence. Crawford, 363 F.3d at 1161.

As explained above in detail, Plaintiff has failed to establish under the Social Security regulations that using a cane was a medical necessity. Thus, because the record does not support the conclusion that use of a cane is medically necessary for Plaintiff, there was no error by the ALJ in failing to include use of a cane in the hypotheticals posed to the VE.

Likewise, all of Plaintiff's arguments concerning alleged discrepancies between occupational characteristics of jobs in the Selected Characteristics of Occupations ("SCO") and the Dictionary of Occupational Titles ("DOT") are not a basis for remand because any discrepancy between the impact of using a cane is a moot point when the cane was not required to be considered.[4]

The ALJ included multiple qualifiers in his hypothetical to account for the credible limitations supported by substantial evidence:

> Assume a hypothetical individual of the claimant's age, education and past job experience. And further assume that this hypothetical individual would be limited to light work, with frequent climbing, only with occasional climbing of ramps and stairs. No climbing of ladders, ropes, or scaffolds. Frequent balancing, occasional stooping, no kneeling, crouching, or crawling. They would need to avoid concentrated exposure to machinery and heights. They would be further limited to occupations requiring no more than simple, routine, repetitive tasks not performed in a fast-paced production environment involving only simple, work-related instructions and decisions, and relative few workplace changes. They

---

[4]The SCO "was produced under an Interagency agreement with the Social Security Administration by the U.S. Employment Service" and provides "adjunct data on specific vocational training time, physical demands, and environmental conditions . . . for each occupation defined in the [DOT]." See Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, U.S. Dep't of Labor, Employment and Training Admin., 1993, pp. v-vi, *available at* http://www.nosscr.org/sco/sco.pdf (last visited Apr. 12, 2017).

>would be further limited to occupations requiring no more than occasional
>interaction with co-workers and members of the general public.

R. 49-50.

The VE opined Plaintiff could not perform any past relevant work but then identified three, unskilled light jobs: housekeeper, inventory clerk, and entry-level office helper. R. 50. When the ALJ added the condition of sedentary work and being off task twenty percent of the workday, then no jobs were available. R. 51. Plaintiff's counsel's questioning of the VE first addressed the classification of Plaintiff's past relevant work as she performed it. R. 52. However, once the ALJ announced past relevant work was not an issue, counsel's only question related to mental requirements for work; there was no mention of any additional physical restrictions, including use of a cane. R. 53. In making his final determination that there were jobs available Plaintiff could perform, the ALJ relied on the first hypothetical – the one that included all of the restrictions validly supported by the record – to determine Plaintiff was not disabled.

In sum, because the hypothetical presented to the VE, upon which the ALJ relied to find Plaintiff was not disabled, accurately and comprehensively reflected Plaintiff's characteristics, the ALJ's reliance on the VE testimony was proper. See McSwain, 814 F.2d at 619-20; Pendley, 767 F.2d at 1562-63. Therefore, the ALJ's conclusion there is work Plaintiff can perform in the national economy is supported by substantial evidence, and this issue forms no basis for remand.

### C. The ALJ Did Not Err In His Consideration of Plaintiff's Intellectual Functioning.

Plaintiff also argues the ALJ erred in evaluating whether she meets the requirements of Listing 12.05C. Pl.'s Br., pp. 10-15. In particular, Plaintiff contends that "despite evidence that

10

[her] intellectual disability *might* meet the requirements of Listing 12.05C," the ALJ did not adequately develop the record to obtain current IQ testing. Id. at 11 (emphasis added). The Commissioner argues the ALJ had sufficient information in the record to properly determine Plaintiff had not carried her burden to show she met all the requirements of Listing 12.05C. Comm'r's Br., pp. 7-14.

### 1. The Requirements for Satisfying Listing 12.05C at Step Three of the Sequential Evaluation Process

At step three of the sequential evaluation process, the Commissioner must determine whether a claimant meets or equals a disability described in the Listing of Impairments, which describes impairments severe enough to prevent a person from performing any gainful activity. Davis v. Shalala, 985 F.2d 528, 532 (11th Cir. 1993). Plaintiff bears the burden of showing her condition meets or equals a Listing. Castle v. Colvin, 557 F. App'x 849, 852 (11th Cir. 2014); Wilkinson *ex rel.* Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987).

In order to show that her impairment meets a Listing, Plaintiff needs to satisfy all of the specified medical criteria; "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). "To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'" Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002) (citation omitted). It is axiomatic that when a claimant's condition meets or equals a Listing, the Commissioner must find the claimant disabled without regard to the claimant's age, education, or previous work experience. 20 C.F.R. § 416.920(d).

"Intellectual disability," as defined by Listing 12.05, "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during

the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. To qualify as intellectually disabled, a claimant's condition must satisfy this general diagnostic definition and also satisfy one of four criteria specified in subparts A through D of the Listing. Id. §12.00A; see also Perkins v. Comm'r, Soc. Sec. Admin., 553 F. App'x 870, 872 (11th Cir. 2014); Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997). Thus, "a claimant must demonstrate both subaverage intellectual functioning and deficits in adaptive functioning, as well as satisfying one of the additional criteria, to prove entitlement to disability benefits under Listing 12.05." Jordan v. Comm'r of Soc. Sec. Admin., 470 F. App'x 766, 768 (11th Cir. 2012). The regulations give several examples of adaptive activities, including: "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00C(1).

Listing 12.05C states: "The required level of severity for this disorder is met when . . . [there is] a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Id. § 12.05C. Thus, a claimant generally meets the Listing 12.05C criteria when she, in addition to satisfying the diagnostic definition, "presents a valid IQ score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work activities." Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992); see also Perkins, 553 F. App'x at 873 (requiring a showing for Listing 12.05C claim that individual meets the Listing 12.05 diagnostic criteria, including deficits in adaptive function, along with onset before age twenty-two, a qualifying IQ score, and the requisite deficits

in work related functioning). However, "a valid I.Q. score need not be conclusive of [intellectual disability] where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." Lowery, 979 F.2d at 837; see also Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir. 1986) ("[IQ] test results must be examined to assure consistency with daily activities and behavior").

### 2. The Administrative Record Shows Plaintiff Does Not Meet Listing 12.05C.

For the reasons discussed by the Commissioner in her briefing, the Court finds no error with the ALJ's evaluation of Plaintiff intellectual functioning. Comm'r's Br., pp. 10-14. First, the ALJ discussed Plaintiff's mental health treatment, including the diagnosis of borderline intellectual functioning with a full-scale IQ score of 75. R. 17-18, 279, 290. The ALJ also noted various diagnoses in the record of schizophrenia and bi-polar disorder, but noted improvement with medication and a 2012 examination in which mental health treatment notes indicated Plaintiff was oriented, had an intact recent memory, average fund of knowledge, intact attention and concentration, and normal thought content. R. 17, 280. The ALJ also reviewed the notes of Kenneth Azar, M.D., who saw Plaintiff on June 19, 2012. Dr. Azar noted Plaintiff returned after a four-year absence from treatment and was in the process of appealing the denial of disability benefits. R. 17, 279. Despite this four-year absence, Plaintiff was reported to have good insight and judgment, and Dr. Azar again diagnosed bi-polar disorder and a full scale IQ of 75. R. 18, 279.

The full IQ score memorialized in the record as late as 2012 was 75. As set forth above, one of the requirements for Listing 12.05C is a full-scale IQ in the sixty to seventy range. Plaintiff did not meet the I.Q. threshold consideration for 12.05C. Moreover, Dr.

Azar diagnosed Plaintiff with borderline intellectual functioning. R. 290. A diagnosis of borderline intellectual functioning "is mutually exclusive" of intellectual disability. Jordan, 470 F. App'x at 768-69. No matter, argues Plaintiff, the ALJ should have ordered additional testing to more fully develop the record because one provider, Julian Bravo, M.D., indicated on one treatment note that Plaintiff "has IQ scores in the 60-69 range." Pl.'s Br., p. 12.

A claimant has the burden of proving her disability and is responsible for providing evidence in support of her claim. Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003). Nevertheless, "because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record." Larry v. Comm'r of Soc. Sec., 506 F. App'x 967, 969 (11th Cir. 2013) (citing Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to obtain additional information by ordering a consultative examination unless the record establishes that such an examination is necessary to enable an ALJ to render an informed decision. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1269 (11th Cir. 2007); Wilson v. Apfel, 179 F.3d 1276, 1278 (11th Cir. 1999); Holladay v. Bowen, 848 F.2d 1206, 1210 (11th Cir. 1988). The regulations also provide the ALJ may order a consultative examination when warranted. See 20 C.F.R. § 416.917. "It is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision." Reeves v. Heckler, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (citation omitted).

There was no need for the ALJ to more fully develop the record with respect to Plaintiff's intellectual functioning. First, Dr. Bravo did not state Plaintiff has scores in the 60-69 range. His note states, "*She tells me* that her IQ score is in the 60 range when she was tested." R. 346 (emphasis added). Second, the ALJ had the notes of Dr. Azar from 2006 to

2008, and again in 2012, which reported a full scale IQ score of 75. R. 272-300. He was not required to accept a one-time, subjective and unsupported statement from Plaintiff to Dr. Bravo as an indication of the need to more fully investigate Plaintiff's intellectual functioning.

Moreover, although a low IQ score raises a presumption of intellectual disability, that presumption may be rebutted with evidence of daily activities that are inconsistent with a diagnosis of intellectual disability. See Hodges v. Barnhart, 276 F.3d 1265, 1269 (11th Cir. 2001). Furthermore, the results of standardized tests are only part of the overall assessment, which includes an analysis of daily activities and behavior for a determination on whether there are deficits in adaptive functioning. See Frame v. Comm'r, Soc. Sec. Admin., 596 F. App'x 908, 910, 912-13 (11th Cir. 2015). Thus, even if the Court were to assume Plaintiff had an IQ score in the "60-69 range," an assumption not supported by any objective evidence in the record, Plaintiff has not established the ALJ erred in not finding satisfaction of the requirements for Listing 12.05C.

As reviewed by the ALJ, other evidence in the record showed Plaintiff did not meet the diagnostic description in the introductory paragraph of Listing 12.05. In particular, the record does not demonstrate requisite deficits in adaptive functioning. The ALJ extensively reviewed Plaintiff's daily activities and behavior. R. 14, 16, 18. The ALJ found only mild restrictions in activities of daily living. R. 14. Plaintiff self-reported that she cooks, does some household chores, washes clothes, and grocery shops. R. 14, 16, 40, 229, 231-32, 246, 248, 249. Plaintiff also crochets blankets, plays videogames, and pays bills. R. 14, 16, 45, 229, 232, 248, 251. Moreover, as discussed above, mental health treatment notes from 2012 indicated Plaintiff was oriented, had an intact recent memory, average fund of knowledge, intact attention and

concentration, and normal thought content. R. 17, 280. As the ALJ summarized, Plaintiff's "activities are indicative of a fairly active and varied lifestyle and are not representative of a significant restriction of activities or constriction of interests." R. 16.

In sum, there was no error in the ALJ's analysis of Plaintiff's intellectual functioning and finding Plaintiff did not meet Listing 12.05C. Because the ALJ had sufficient information to make an informed decision on Plaintiff's intellectual functioning and include appropriate limitations in the RFC for no more than simple, routine, and repetitive tasks, there was no need to obtain additional information to develop the record. See Ingram, 496 F.3d at 1269 (recognizing ALJ not required to seek additional information so long as record contains sufficient information to make an informed decision on a claimant's application).

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 12th day of April, 2017, at Augusta, Georgia.

                                                                    /s/ Brian K. Epps
                                                                    BRIAN K. EPPS
                                                                    UNITED STATES MAGISTRATE JUDGE
                                                                    SOUTHERN DISTRICT OF GEORGIA